# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TENNESSEE EXTRACTS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00879** |
| | ) | **District Judge Aleta A. Trauger** |
| **TGC SYSTEMS, LLC d/b/a TOTAL GROW** | ) | |
| **CONTROL, LLC, TOTAL GROW** | ) | **JURY DEMAND** |
| **HOLDINGS, LLC, TOTAL GROW CONTROL** | ) | |
| **HOLDINGS LLC, TG TECH HOLDINGS** | ) | |
| **LLC, and DEREK OXFORD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY MOTION TO TRANSFER VENUE

---

Plaintiff Tennessee Extracts, LLC ("TennEx" or "Plaintiff") respectfully submits this Response in Opposition to the Motion to Dismiss or Alternatively Motion to Transfer Venue (the "Motion") filed by Defendants TGC Systems, LLC d/b/a Total Grow Control, LLC ("Total Grow Control"), Total Grow Holdings, LLC ("Total Grow Holdings"), Total Grow Control Holdings LLC ("Total Grow Control Holdings"), TG Tech Holdings LLC ("TG Tech"), and Derek Oxford (collectively, "Defendants"). The Motion is without merit and should be denied in its entirety for the following reasons.

## INTRODUCTION

Despite Defendants' improper attempt to scrutinize the specific allegations of the Complaint in a vacuum, the Complaint taken as a whole shows that: (1) all of TennEx's claims and theories of liability are sufficiently pled under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure because they are plausible on their face—they are properly supported by specific

facts applied to the material elements of each claim and theory of liability; (2) TennEx's claims involving allegations of fraud (*i.e.*, the Tennessee Consumer Protection Act (TCPA), intentional misrepresentation, and negligent misrepresentation) are pled with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure; (3) TennEx's claim for civil conspiracy is properly based on the underlying predicate torts of intentional misrepresentation, negligent misrepresentation, and violation of the TCPA; and (4) all Defendants are part of a common, fraudulent enterprise manipulated with the malicious intent to escape liability.

Under the various theories of liability pled in the Complaint (*i.e.*, piercing the corporate veil and alter ego), the acts and omissions of any one Defendant are directly attributable to all Defendants. Mr. Oxford, as an owner, officer, and/or director of Total Grow Control, Total Grow Holdings, Total Grow Control Holdings, and/or TG Tech (the "Corporate Defendants"), is also personally liable for the acts and omissions of the Corporate Defendants. Defendants' transparent attempt to create a perception that the Corporate Defendants are somehow separate and distinct entities, and that Mr. Oxford is anything other than inextricably intertwined with them, must fail.

Each Defendant is liable to TennEx for violation of the TCPA, professional negligence, negligence *per se*, intentional misrepresentation, negligent misrepresentation, breach of the Purchase Agreement (as defined herein), breach of the License Agreement (as defined herein), and civil conspiracy. The Complaint sufficiently states such claims upon which relief may be granted in accordance with the Federal Rules of Civil Procedure and other applicable law. Accordingly, TennEx should be afforded the opportunity to proceed with the discovery phase of litigation to gather additional evidence in support of its claims and theories of liability.

The Middle District of Tennessee is also the appropriate, and most convenient, forum for this action.[1] The Facility (as defined in Paragraph 13 of the Complaint) is located in Smyrna, Tennessee, the Plant (as defined in Paragraph 15 of the Complaint) was constructed and is located in the Facility, and those individuals (and potential witnesses) who have worked on the Plant did so at the Facility (with the majority of subcontractors located here in Middle Tennessee). Accordingly, the majority of events and omissions giving rise to TennEx's claims occurred in the Middle District of Tennessee. Defendants' attempt to transfer venue to the Southern District of Texas (including, but not limited to, filing the Texas Action in a thinly-veiled ploy to bolster its transfer request) is wholly unsupported by the facts and amounts to nothing more than an effort to shift any expense and inconvenience to Plaintiff and Plaintiff's witnesses. Jurisdiction and venue are proper here in the Middle District of Tennessee. Defendants' Motion should be denied in its entirety.

## STATEMENT OF FACTS

The factual background of this dispute is fully set forth in the Complaint (DE 1-4). Accordingly, TennEx adopts and incorporates by reference the factual allegations of the Complaint as if fully stated herein.

---

[1] As referenced in Paragraph 5 of Defendants' Brief in Support of the Motion (DE 11), on December 20, 2021, two months after TennEx filed the instant action, three of the five Defendants filed a purely retaliatory Complaint against TennEx and several of its owners, officers, and directors in the United States District Court for the Southern District of Texas, *Total Grow Holdings, LLC, TG Tech Holdings, LLC, and TGC Systems, LLC v. Tennessee Extracts, LLC, Leslie Hough, Joshua Backman [sic], Kevin Woods, and Michael Sheehan*, Civil Action No. 3:21-cv-354 (the "Texas Action"). Despite Defendants' mischaracterization that the Texas Action asserts "unrelated causes of action," the facts and causes of action alleged in the Texas Action arise out of the same transactions and occurrences as, and substantially overlap with, those alleged by TennEx in the instant action. This Court may take judicial notice of the filings in the Texas Action, including, but not limited to the Complaint. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

3

**STANDARD OF REVIEW**

## I.    Rule 12(b)(6) Standard

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts are to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Rules merely require that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Federal pleading standards rely on "liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* (citing *Gibson*, 355 U.S. at 47). Indeed, "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990)).

The allegations in the complaint, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal

4

conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## II.    Rule 9(b) Standard

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b). However, Rule 8's general pleading requirement and Rule 9(b)'s particularity requirement must be read together. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). The Sixth Circuit has explained that, while Rule 9(b) imposes a heightened standard, its underlying purpose is modest, designed to serve the same ends as the general pleading requirements of Rule 8:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading.

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (citations and quotation marks omitted). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* In other words, the heightened pleading standard of Rule 9(b) is satisfied if a plaintiff specifies "the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).

This Court has also recognized that "fraud may involve subterfuge and misdirection that leave a victim in the dark about many of the details of a scheme, even after he realizes he has been defrauded." *Vendeven v. Wyndham Vacation Resorts, Inc.*, No. 2:20-CV-00056, 2021 WL 5567033, at *7 (M.D. Tenn. Nov. 29, 2021). Accordingly, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge." *Id.* (citing *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 630 (N.D. Ohio 2016) (quoting *U.S. Sec. & Exch. Comm'n v. Blackwell*, 291 F. Supp. 2d 673, 691 (S.D. Ohio 2003))).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), when reviewed under the Rule 8 general pleading standard or the Rule 9 particularity standard, depends upon the context of the case and "requires the reviewing court to draw on its judicial experience and common sense." *Shively v. Green Local School Dist. Bd. of Educ.*, 579 Fed. Appx. 348, 353 (6th Cir. 2014); *Iqbal*, 556 U.S. at 679.

### III.    Motion to Transfer Venue Standard

Venue is governed by 28 U.S.C. § 1391, which provides in pertinent part:

A civil action may be brought in --

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue to be proper, it is not required that the most substantial part of the events or omissions occur in the district, but only a substantial part. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

The standard for transfer of venue to a more convenient forum is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court **may** transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (emphasis added).

The burden is on Defendants to prove that transfer is warranted, and that burden is substantial. *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008); *Blane v. Am. Investors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996). Courts have broad discretion to determine when party convenience or the interest of justice makes a transfer appropriate. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009). In making such a determination, the Court is to balance and "consider the private interests[2] of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns,[3] such as systemic integrity and fairness, which come under the rubric of interests of justice." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (internal quotations omitted) (footnotes added); *Reese*, 674 F.3d at 320. Unless these considerations weigh heavily in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Moses*, 929 F.2d at 1137; *Smith*, 578 F. Supp. 2d at 962 ("**A plaintiff's choice of forum is usually entitled to substantial consideration** in balancing the § 1404(a) factors. **This is especially true where the plaintiff also resides in the chosen forum**." (citations omitted) (emphasis added)). "[T]ransfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to the other." *Paine v. Intrepid*

---

[2] Private interests include convenience of the parties and witnesses, relative ease of access to sources of proof, availability of process to compel attendance of unwilling witnesses, cost of obtaining willing witnesses, and practical problems indicating where the case can be tried more expeditiously and inexpensively. *Smith*, 578 F. Supp. 2d at 962.

[3] Public interests include enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. *Smith*, 578 F.Supp.2d at 962.

7

*U.S.A., Inc.,* No. 3:14-2005, 2015 WL 3743357, at *7 (M.D. Tenn. June 15, 2015) (citing *Diebold,*

*Inc. v. Firstcard Financial Services, Inc.* 104 F. Supp. 2d 758, 764 (N.D. Ohio 2000)).

## LAW AND ARGUMENT

I. **Defendants' Motion to Dismiss Should Be Denied in Its Entirety Because All of TennEx's Claims and Theories of Liability Are Sufficiently Pled Under the Federal Rules of Civil Procedure.**

    A. **Defendants Do Not Seek Dismissal of All of TennEx's Claims.**

As an initial matter, Defendants do not challenge the sufficiency of all of TennEx's claims alleged in the Complaint. Specifically, the Motion does not seek dismissal of Count Two (professional negligence) or Count Three (negligence *per se*), as Defendants have failed to argue any reason why such causes of action would be subject to dismissal.

Moreover, the Defendants that are parties to the contracts at issue—Total Grow Control as party to the May 14, 2019 Equipment Purchase Agreement (the "Purchase Agreement"), and TG Tech as party to the May 6, 2020 Technology Know-How License Agreement (the "License Agreement")—do not seek dismissal of Count Six (breach of the Purchase Agreement) or Count Seven (breach of the License Agreement). Rather, the remaining three Defendants (Total Grow Holdings, Total Grow Control Holdings, and Mr. Oxford) merely challenge their potential liability for Total Grow Control's breach of the Purchase Agreement and TG Tech's breach of the License Agreement based upon a lack of privity of contract.

As explained herein, all of TennEx's claims and theories of liability are sufficiently alleged to survive the Motion to Dismiss. Nonetheless, even if Defendants prevailed on every argument raised in the Motion (which they should not), four of TennEx's causes of action would survive: (1) professional negligence (Count Two); (2) negligence *per se* (Count Three); (3) Total Grow

Control's breach of the Purchase Agreement (Count Six); and (4) TG Tech's breach of the License Agreement (Count Seven).

At issue, then, are TennEx's fraud-related claims—violation of the TCPA (Count One), intentional misrepresentation (Count Four), and negligent misrepresentation (Count Five)—its claim for civil conspiracy (Count Eight),[4] and its theories of liability (*i.e.*, piercing the corporate veil and alter ego). Each such claim and theory of liability is sufficiently pled under the Federal Rules of Civil Procedure. The Motion should, therefore, be denied.

**B.      TennEx's Fraud-Related Claims Are Sufficiently Pled Against All Defendants Under Fed. R. Civ. P. 8, 9(b), and 12(b)(6).**

**i.      TennEx Has Sufficiently Pled the "Who, What, When, Where, and How" Under Rule 9(b).**

TennEx has alleged against Defendants three fraud-related causes of action, including Count One (violation of the TCPA), Count Four (intentional misrepresentation), and Count Five (negligent misrepresentation). Defendants challenge these claims on the bases that (1) TennEx allegedly failed to comply with the heightened pleading requirement of Fed. R. Civ. P. 9(b); and (2) TennEx improperly resorted to "group pleading," instead of making specific allegations as to each Defendant's alleged involvement. (Defs.' Brief in Supp. of Mot., DE 11, ¶¶ 20-34.) In other words, Defendants do not appear to take issue with the facts alleged by TennEx as applied to the elements of its claims for intentional misrepresentation, negligent misrepresentation, and violation of the TCPA. Rather, Defendants maintain that TennEx has failed to allege the "who, what, when, where, and how" of the fraud. To the contrary, however, TennEx has sufficiently alleged "who, what, when, where, and how" pursuant to Fed. R. Civ. P. 9(b) and applicable caselaw.

---

[4] Mistakenly labeled "Count Nine" in the Complaint.

9

**Who** made the fraudulent misrepresentations and orchestrated the fraudulent scheme? Mr. Oxford, Mr. Thompson, and other representatives of Defendants. (Compl., DE 1-4, ¶¶ 17, 82, 102, 103, 105, 107, 110, 121.) **What** fraudulent misrepresentations of material fact were made? The list is long, including, but not limited to:

- That Total Grow Control was capable of offering and selling TennEx "equipment for extraction of oils from hemp and other materials." (*Id.* at ¶ 18 (quoting the Purchase Agreement, Ex. A to Compl. at 2).)

- That Total Grow Control had "developed a series of solutions to increase efficiency with our automated systems," had a "team [consisting] of skilled professionals who are focused on delivering quality and value," and was able to "allow [Plaintiff] to develop a successful strategy to increase [its] efficiency and profitability." (*Id.* at ¶ 22 (quoting the Purchase Agreement, Ex. A to Compl. at 1).)

- That Total Grow Control would sell equipment necessary to construct and install a fully operational Plant capable of (i) processing 4,000 pounds of hemp per day with an CBD oil extraction rate of 85%; (ii) recovering 95% of ethanol; and (iii) including operation related services throughout the term of the Project. (*Id.* at ¶ 23 (citing the Purchase Agreement, Ex. A to Compl. at 1, 13).)

- That the equipment TennEx purchased from Total Grow Control was "designed to process 4000#/day of hemp on a dry basis." (*Id.* at ¶ 24 (quoting the Purchase Agreement, Ex. A to Compl. at 2).)

- That Total Grow Control would provide TennEx with the necessary equipment, a start-up engineer, guidance pertaining to operation of the Plant, classroom training, equipment testing, and a punch-list to start operations (*Id.* at ¶ 25(a)-(f) (citing the Purchase Agreement, Ex. A to Compl.).)

- That each item of equipment sold to TennEx "[was] free from defects in design, materials and workmanship, free of liens, and [was] fit for the intended use." (*Id.* at ¶ 31(a) (quoting the Purchase Agreement, Ex. A to Compl. at 9).)

- That the equipment TennEx purchased would "successfully deliver its rated output" and was "capable of producing the stated output capacity as stipulated in the Contract." (*Id.* at ¶ 31(b)-(c) (quoting the Purchase Agreement, Ex. A to Compl. at 10).)

- That a chemical engineer would be assigned for consulting visits, on-site trouble shooting, and on-site process optimization. (*Id.* at ¶ 31(d) (citing the Purchase Agreement, Ex. A to Compl. at 12).)

FIRM 1 008836 ...
01/24/22

- That TG Tech would provide TennEx "with technical assistance for the start-up, operations, and maintenance" of the "complete package of the equipment ('Unit')." (*Id.* at ¶ 36 (quoting the License Agreement, Ex. C to Compl. at 1).)

- That TG Tech would provide TennEx with a qualified technician to provide support and to conduct and inspect the performance of the equipment and the operational competencies of TennEx's personnel. (*Id.* at ¶ 37 (citing the License Agreement, Ex. C to Compl. at 1, 2, 5).)

- That Total Grow Control had the requisite personnel and expertise, including licensed engineers. (*Id.* at ¶ 46.)

- That the lead time for delivery of equipment was four months (not the 13 months it actually took). (*Id.* at ¶ 63 (citing the Purchase Agreement, Ex. A to Compl. at 12).)

**When** were the fraudulent misrepresentations made? "[A]t or near the time the parties entered into the Purchase Agreement and the License Agreement and throughout the duration of the Project. Indeed, the Purchase Agreement and the License Agreement themselves contain several misrepresentations." (*Id.* at ¶¶ 82, 110.) **Where** were the fraudulent misrepresentations made? "[B]y Oxford, Thompson, and other representatives of Defendants while they were located in Texas and/or Florida." (*Id.*) **How** did Defendants accomplish the fraudulent scheme? By inducing TennEx to enter into the multi-million-dollar Purchase Agreement and the License Agreement in hopes of obtaining an operational Plant, while Defendants knew that they lacked the experience, knowledge, and expertise to provide TennEx with a usable extraction and distillation machine. (*Id.* at 105.) Defendants' expansive fraud is also specifically pled in TennEx's fraud-related causes of action. (*See id.* at 73-87, 102-115, 117-126.)[5]

TennEx does not dispute that the heightened pleading requirements of Rule 9(b) apply to its fraud-related claims. It adamantly maintains, however, that it has complied with such requirements. In addition, and as set forth above, this Court has recognized that "fraud may involve

---

[5] With respect to its claim for violation of the TCPA, TennEx even identifies which specific provisions of the Act have been violated—Tenn. Code Ann. § 47-18-104(b)(5), (7), (9), (13), and (35). (*Id.* at ¶ 85.)

subterfuge and misdirection that leave a victim in the dark about many of the details of a scheme, even after he realizes he has been defrauded." *Vendeven*, 2021 WL 5567033, at *7. Therefore, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge." *Id.* In the instant action, TennEx does not have access to all the facts surrounding the scope and magnitude of Defendants' fraud. Several of those facts are within the exclusive knowledge of Defendants. Nonetheless, based upon the facts presently known to TennEx, the Complaint states claims for intentional misrepresentation, negligent misrepresentation, and violation of the TCPA sufficient to "unlock the doors of discovery." Therefore, Defendants' Motion to dismiss those claims should be denied, and TennEx should be permitted to take discovery to uncover additional facts to further bolster its fraud-related claims.

> ii. **TennEx Has Not Resorted to Improper "Group Pleading"; Rather, Each Defendant Has Implicated Itself Under the Purchase Agreement, the License Agreement, and Related Documents.**

Defendants complain that TennEx is guilty of improper "group pleading" that fails to satisfy Rule 9(b)'s heightened pleading standard. However, as explained more fully below in Section I., D. concerning TennEx's theories of liability (including piercing the corporate veil and alter ego liability), Defendants have created a common, fraudulent enterprise designed with the malicious intent to escape liability. Therefore, Defendants' own conduct has rendered it impossible for TennEx to determine with which entity it has been dealing. Nonetheless, TennEx has sufficiently alleged the various interconnectivity of Defendants such that its fraud-related claims involving multiple Defendants are pled with sufficient particularity under Rule 9(b).

When a plaintiff asserts fraud claims against multiple defendants, it typically must make "specific allegations as to each defendant's alleged involvement." *N. Port Firefighters' Pension–Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 773 (M.D. Tenn. 2013)

(Haynes, C.J.). That is, mere "'group pleading' . . . fails to meet . . . [Rule] 9(b)'s specificity requirements." *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005). As this Court has pointed out, however, "The principle that Rule 9(b) requires more than mere group pleading should not be misconstrued as a technical requirement to use nothing but proper nouns or to repeat oneself unnecessarily so as to avoid ever talking about defendants as a group, even when it is clear and efficient to do so." *United States v. Napper*, No. 3:17-CV-1478, 2021 WL 4992651, at *22 (M.D. Tenn. Oct. 27, 2021). Further, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge." *Vendeven*, 2021 WL 5567033, at *7.

The instant action is not one in which separate and distinct defendants have been improperly grouped together under blanket allegations of fraud. Rather, Defendants have conducted business in a manner that has left TennEx perplexed as to the relationship between each Defendant. What is clear, however, is that Mr. Oxford is the common thread connecting the Corporate Defendants.

For example, the Purchase Agreement was signed by Mr. Oxford on behalf of "Total Grow Control." (*See* the Purchase Agreement, Ex. A to Compl., 13.) The Purchase Agreement is on "Total Grow Control" letterhead. (*Id.* at 1.) It repeatedly references "Total Grow Control" throughout. Buried in the "Definitions" section on page 8, however, it provides that "'Total Grow Control' means Total Grow Holdings, LLC." (*Id.* at 8.) Total Grow Control, LLC, however, is the fictitious name under which TGC Systems, LLC operates. (Compl., DE 1-4, ¶ 2.) Accordingly, the Purchase Agreement alone implicates three of the five Defendants: (1) TGC Systems, LLC d/b/a Total Grow Control, LLC; (2) Total Grow Holdings, LLC; and (3) Mr. Oxford.

Adding to TennEx's confusion, both the Amendment to Equipment Purchase Agreement and Amendment #2 to Equipment Purchase Agreement executed in November 2020 define "Seller" as "Total Grow Control Holdings, LLC." (*See* Amendments to Purchase Agreement, Exs. E and F to Compl.) Amendment #2 to Equipment Purchase Agreement was signed by Mr. Oxford as CEO on behalf of "Total Grow Control Holdings, LLC." (*See* Am. #2 to Purchase Agreement, Ex. F to Compl.) Thus, the Amendments to the Purchase Agreement implicate a fourth Defendant, Total Grow Control Holdings, LLC.

The Purchase Agreement also references a "Technology License." (*See* the Purchase Agreement, Ex. A to Compl., 12.) This refers to the License Agreement by and between TennEx and the fifth and final Defendant, TG Tech Holdings LLC. (*See* the License Agreement, Ex. C to Compl.) Mr. Oxford, again, signed the License Agreement, this time as CEO on behalf of TG Tech Holdings, LLC. (*Id.* at 12.) The first recital in the License Agreement provides, "Licensor [TG Tech Holdings LLC] represents a technologically advanced process and know-how which is provided as a complete package of equipment ('Unit') and services designed for the extraction of essential oils from 4000 PPD (pounds per day) of raw hemp biomass." (*Id.* at 1.) This references the equipment and services sold to TennEx by TGC Systems, LLC d/b/a Total Grow Control, LLC; Total Grow Holdings, LLC; and/or Total Grow Control Holdings, LLC under the Purchase Agreement. Indeed, the second recital in the License Agreement goes on to reference the Purchase Agreement: "Concomitant with the sale of the Unit to Licensee, provided under a separate sales/purchase agreement, Licensor and Licensee shall execute the 'Technology Know-How License Agreement' providing Licensee with technical assistance for the start-up, operations, and maintenance of the Unit." (*Id.*) Therefore, the License Agreement appears to conflate TG Tech Holdings LLC (as Licensor) with TGC Systems, LLC d/b/a Total Grow Control, LLC, Total Grow

14

Holdings, LLC, and Total Grow Control Holdings, LLC (all as Seller) under the Purchase Agreement.

Other documents related to the Purchase Agreement further muddy the waters. The "Acronyms/Definitions" section of the Scope of Work Addition for T.H.E. LLC Tennessee Project (the "Scope of Work") defines: (1) "TGC" as "Thompson Global Partners – Engineering and Design"; and (2) "TGP" as "Total Grow Control – Hemp Extraction Unit provider (plus additional services as requested and agreed to between TGC and T.H.E. [TennEx])." (Scope of Work, Ex. B to Compl. at 1.) Like the Purchase Agreement, the Scope of Work is also on "Total Grow Control" letterhead. (*Id.*) The Scope of Work goes on to use "TGC" and "TGP" interchangeably, often referring to it/them as "TGC/TGP." (*See generally id.*)

Simply put, the Purchase Agreement, the Amendments to the Purchase Agreement, the License Agreement, and the Scope of Work themselves cross-reference, and implicate, each Defendant. TennEx is the sole counterparty to each document, but it has no way of knowing with which Defendant it has been conducting business. TennEx, therefore, was left with no choice but to refer to them as a group of "Defendants" when alleging its fraud-related claims. Such pleading is not improper "group pleading," but rather done out of necessity as a result of Defendants' utter disregard for the corporate form. Accordingly, TennEx has properly pled its claims for intentional misrepresentation, negligent misrepresentation, and violation of the TCPA as to each Defendant under Rule 9(b).

## C. TennEx's Civil Conspiracy Claim Is Properly Pled Based Upon the Underlying Torts of Intentional Misrepresentation, Negligent Misrepresentation, and Violation of the TCPA.

TennEx generally agrees with Defendants' recitation of the law with respect to TennEx's claim for civil conspiracy. (Defs.' Brief in Supp. of Mot., DE 11, ¶ 37.) However, TennEx

15

vigorously disputes Defendants' argument that such civil conspiracy claim is somehow defective. Specifically, Defendants argue that there can be no civil conspiracy because there is no "underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Flooring Coverings, Inc. v. McCormick*, 247 S.W. 3d 169, 180 (Tenn. Ct. App. 2007). Defendants are mistaken.

TennEx has alleged five underlying torts in connection with its claim for civil conspiracy: (1) violation of the TCPA (Count One); (2) professional negligence (Count Two); (3) negligence *per se* (Count Three); (4) intentional misrepresentation (Count Four); and (5) negligent misrepresentation (Count Five). Specifically, TennEx alleged:

> 155.   Defendants have engaged in, and are continuing to engage in, a civil conspiracy to (i) mislead Plaintiff into purchasing equipment incapable of performing in the manner that Total Grow Control warranted said equipment could perform; (ii) induce Plaintiff to agree to the terms of both the Purchase Agreement and the License Agreement, despite Defendants' inability to perform materially under either; and (iii) force Plaintiff to continue working with Defendants due to the uniqueness of the subject matter of the Project, despite Defendants' lack of responsiveness, professional misconduct, negligence, fraud, and breach of contract.

> 156.   Each Defendant was and is still aware of the other Defendants' intent to engage in this civil conspiracy, and each Defendant has taken overt actions in furtherance of this conspiracy.

(Compl., DE 1-4, ¶¶ 155-156.)

As set forth above, Defendants do not challenge TennEx's second and third causes of action for professional negligence or negligence *per se*. In addition, and as established above, TennEx has sufficiently pled its fraud-related claims under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. Finally, TennEx properly alleged that "[b]ecause Total Grow Control, Total Grow Holdings, Total Grow Control Holdings, and/or TG Tech are so closely connected to one another and are shields being employed to avoid liability to Plaintiff, these entities are alter egos of another; the obligations and liabilities imposed on one such entity is attributable to all." (*Id.* at

16

¶ 158.) As spelled out above with respect to "group pleading," the Purchase Agreement, the Amendments to the Purchase Agreement, the License Agreement, and the Scope of Work evidence the interconnected web of the Corporate Defendants and their ignorance of the corporate structures, with Mr. Oxford at the center of it all. The Complaint sufficiently states a claim for civil conspiracy. Therefore, Defendants' Motion to Dismiss such claim should be denied.

      **D.**    **TennEx Has Sufficiently Pled the Liability of Each Defendant for All Claims, Including Breach of Contract, Under Various Theories of Liability (*i.e.*, Piercing the Corporate Veil and Alter Ego).**

For each of its claims (including breach of the Purchase Agreement and breach of the License Agreement), TennEx has sufficiently alleged that the corporate veil should be pierced as to each Corporate Defendant such that liability imposed on them is personally attributable to Mr. Oxford. (*See* Compl., DE 1-4, ¶¶ 86, 93, 98, 112, 125, 137, 149, 157.) Specifically, TennEx alleged in each such paragraph:

> As Oxford has personally ignored and manipulated the corporate form as to Total Grow Control, Total Grow Holdings, Total Grow Control Holdings, and/or TG Tech in a manner that promotes fraud and injustice in contravention of public policy, the corporate veil should be pierced as to these entities and the liability imposed on them is attributable personally to Oxford, as well.

(*Id.*) TennEx also alleged in each cause of action (including its breach of contract claims) that the Corporate Defendants are all alter egos of one another, "so closely connected to one another and are shields being employed to avoid liability to Plaintiff" such that "the obligations and liabilities imposed on one such entity is attributable to all." (*Id.* at ¶¶ 87, 94, 99, 113, 126, 138, 150, 158.) Despite Defendants' conclusory argument that TennEx has failed to plead any factual allegations in support of its piercing the corporate veil theory of liability, it is clear that Defendants have simply ignored several well-pled facts.

"A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors." *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). The corporate form, therefore, acts as a veil or shield, protecting its shareholder from personal liability for the debts of the corporation. *Id.* "In appropriate circumstances, however, the corporate veil may be pierced and the acts of a corporation attributed to a shareholder." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 214 (Tenn. 2012). The party attempting to do so must establish that "the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010) (quoting *Barbour*, 112 S.W.3d at 140). "Despite the inapplicability of the remedy's name, the 'corporate veil' of a Tennessee limited liability company may also be pierced, [using] the same standards." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (quoting *In re Steffner*, 479 B.R. 746, 755 (Bkrtcy. E.D. Tenn. 2012)).

In deciding whether to pierce the corporate veil, Tennessee courts apply the factors articulated in *Federal Deposit Insurance Corporation v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984), also known as the *Allen* factors. *Rogers*, 367 S.W.3d at 215. In *Allen*, the court stated:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Allen*, 584 F. Supp. at 397. No single factor is dispositive, nor is it necessary that all factors support piercing the corporate veil. *Rogers*, 367 S.W.3d at 215. In addition to establishing sufficient evidence to pierce the corporate veil under the *Allen* factors, a plaintiff must also make a showing of fraud or injustice. *Southeast Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 673 (6th Cir. 2006).

In the instant action, TennEx has made a convincing showing of fraud and injustice. (*See* Compl., DE 1-4, ¶¶ 15-18, 22-25, 31, 36-37, 46, 51-52, 54, 57, 62-66, 68-69, 73-87, 93-94, 98-99, 102-115, 117-126, 137-138, 149-150, 155-158.) It has also alleged several facts in support of the *Allen* factors:

- Each Corporate Defendant is owned by Mr. Oxford (Factor 4). (Compl., DE 1-4, ¶¶ 6, 14.)

- Each Corporate Defendant is connected to the same address, 2190 Washington Avenue, Alvin, Texas 77511, which is (1) the address of TGC Systems, LLC d/b/a Total Grow Control, LLC's registered agent, Mr. Oxford; (2) Total Grow Holdings, LLC's principal place of business; (3) Total Grow Control Holdings LLC's principal place of business; and (4) TG Tech Holdings LLC's principal place of business **and** the location of its registered agent, Mr. Oxford (Factor 5). (*Id.* at ¶¶ 2-5.)

- Mr. Oxford is the Chief Executive Officer of Total Grow Control and TG Tech, Mr. Oxford is an officer and/or director of each Corporate Defendant, and all Defendants employ the same attorneys (Factor 6). (*Id.* at ¶ 6.)

- As argued above concerning "group pleading," each Corporate Defendant is used as an instrumentality and business conduit for Mr. Oxford and for one another (Factor 7). (*Id.* at ¶¶ 6, 14; *see also* the Purchase Agreement (Ex. 1 to Compl.), the Amendments to the Purchase Agreement (Exs. E-F to Compl.), the License Agreement (Ex. C to Compl.), and the Scope of Work (Ex. B to Compl.)._

- The use of the incestuous web of Corporate Defendants as a subterfuge in illegal transactions, including the Purchase Agreement and the License Agreement, to avoid liability to TennEx (Factor 9). (*Id.* at ¶¶ 87, 94, 99, 113, 126, 138, 150, 158.)

- The use of Thompson Global Partners as a pawn to purportedly transfer to it the existing liability of Total Grow Control (under the Purchase Agreement) and of TG Tech (under the License Agreement (Factor 10). (*Id.* at ¶¶ 39, 59-61.)

19

- Defendants' failure to maintain arms length relationships among themselves and with Thompson Global Partners (Factor 11). (*Id.* at ¶¶ 6, 14, 39, 59-61; *see also* the Purchase Agreement (Ex. 1 to Compl.), the Amendments to the Purchase Agreement (Exs. E-F to Compl.), the License Agreement (Ex. C to Compl.), and the Scope of Work (Ex. B to Compl.).)

TennEx has, therefore, sufficiently alleged at least **seven of the eleven** *Allen* factors in the Complaint. Each Defendant, therefore, faces exposure under the piercing the corporate veil and alter ego theories of liability. Defendants' Motion to Dismiss on such grounds should, therefore, be denied. *See Real Stone Veneers of Tennessee, LLC v. Real Stone of Am., LLC*, No. 1:19-CV-33, 2019 WL 3797332, at *10–11 (E.D. Tenn. Aug. 12, 2019) (holding plaintiffs successfully met the standard to pierce the corporate veil where they "alleged sole ownership of stock by one individual, use of the same office or business location, employment of the same employees or attorneys, and a failure to maintain arm's length relationships among related entities.")

## II.  Venue is Proper in the Middle District of Tennessee and Should Not Be Transferred to the Southern District of Texas.

Defendants desperately seek to have this action transferred to the Southern District of Texas, which is home to the principal place of business of three Defendants: Total Grow Holdings, LLC, Total Grow Control Holdings LLC, and TG Tech Holdings LLC.[6] Applying the above-referenced standard for transfer of venue, however, it is patently obvious that Defendants' request to transfer this case to the Southern District of Texas amounts to nothing more than an inappropriate attempt to shift any inconvenience from Defendants to Plaintiff.

TennEx is located in Smyrna, Tennessee, and the overwhelming majority of events that gave rise to the dispute occurred here in the Middle District of Tennessee. (Compl., DE 1-4, ¶¶ 1, 10.) Moreover, the faulty equipment and machinery at issue is all located in Tennessee. (*Id.*)

---

[6] The remaining two Defendants, TGC Systems, LLC d/b/a Total Grow Control, LLC and Mr. Oxford, however, are citizens and residents of Nevada and Florida, respectively. (Compl., DE 1-4, ¶¶ 2, 6.)

Defendants elected to sell its products and services to TennEx for installation and use in the Plant located in Smyrna, Tennessee. (*Id.* at ¶¶ 16-17, 20, 21, 23-25.) Defendants agreed to come to the Facility in Tennessee to conduct training, testing, and assistance in getting the Plant up and running. (*Id.* at ¶¶ 28, 36-37.) Defendants also agreed to assign a chemical engineer chosen by Total Grow Control for by-monthly consulting visits, on-site trouble shooting, and on-site process optimization. (*Id.* at ¶ 31(d).) Defendants were also fully aware that TennEx would provide labor for off-loading the equipment upon arrival at the Facility and for start-up and erection procedures, which individuals overwhelmingly reside in Middle Tennessee. (*Id.* at ¶¶ 10, 27.) Moreover, the repair and replacement work necessitated by Defendants' acts and omissions has been occurring, and will continue to occur, in Smyrna, Tennessee. (*Id.* at ¶¶ 50, 64, 66, 68, 71.)

Both private and public interests weigh in favor of this Court retaining jurisdiction as the proper venue. *Smith,* 578 F. Supp. 2d at 962. Except for Defendants, the parties and witnesses are located in the Middle District of Tennessee, including, but not limited to, numerous TennEx representatives who have experienced the issues plaguing the Project day-in and day-out. They, along with numerous subcontractors who have performed work on the Project, would incur significant cost if forced to travel to Texas for proceedings in this matter. The System itself is the primary source of proof, and it is located in Smyrna, Tennessee. (Compl., DE 1-4, ¶¶ 1, 10.) In addition, this Court is perfectly capable and well-equipped to try this case as expeditiously and inexpensively as the Southern District of Texas. Any forthcoming judgment of this Court can be enforced easily under 28 U.S.C. § 1963. This Court has a local interest in deciding this local controversy, in which TennEx sustained damages here in the Middle District of Tennessee. Moreover, this Court is more familiar with Tennessee law than any Texas court.[7]

---

[7]    Although Defendants' Brief in Support of the Motion relies upon Tennessee law, Defendants appear to argue that the Purchase Agreement is subject to the laws of Delaware and the License Agreement is subject to the laws of

Defendants have failed to meet their substantial burden that transfer is warranted. *Smith*, 578 F.Supp.2d at 958 (M.D. Tenn. 2008). None of the transfer considerations weigh in favor of Defendants such that TennEx's choice of forum should not be disturbed. *Moses*, 929 F.2d at 1137; *Smith*, 578 F. Supp. 2d at 962. This is especially true because TennEx resides in Smyrna, Tennessee, its chosen forum, with its principal place of business, corporate headquarters, and operational headquarters all located there. *Smith*, 578 F. Supp. 2d at 962. Therefore, the interests of justice compel denial of Defendants' Motion to Transfer Venue to the Southern District of Texas.

## **CONCLUSION**

Defendants' Motion to Dismiss or Alternatively Motion to Transfer Venue should be denied. The Complaint, when properly taken as a whole, clearly establishes that all of TennEx's claims and theories of liability are sufficiently pled under Rules 8, 9(b), and/or 12(b)(6) of the Federal Rules of Civil Procedure because they are plausible on their face. Indeed, each claim and theory of liability is properly supported by specific facts applied to the material elements of each claim and each theory. Moreover, venue is proper in the Middle District of Tennessee, and the case should not be transferred to the Southern District of Texas. Therefore, TennEx respectfully requests that the Court enter an order denying Defendants' Motion in its entirety. In the event, however, that the Court is inclined to grant any portion of Defendants' Motion, TennEx

---

Texas. (Defs.' Brief in Supp. of Motion, DE 11, ¶¶ 10-11.) Defendants ignore, however, that pursuant to Tenn. Code Ann. § 47-18-113(b), and notwithstanding any choice of law provision to the contrary, this dispute and all agreements pertaining thereto are governed by the laws of the state of Tennessee. (Compl., DE 1-4, ¶ 11.)

Defendants also misrepresent that a heading in the License Agreement states "that 'Jurisdiction' is to be in the State of Texas." (Defs.' Brief in Supp. of Motion, DE 11, ¶ 10.) In reality, the heading of Section 8.4 of the License Agreement simply states "Jurisdiction," but does not specify that the same is to be in the State of Texas. (License Agreement, Ex. C to Compl. Sec. 8.4.) Moreover, Section 8.6 of the License Agreement makes abundantly clear that "Section and subsection headings are inserted for convenience of reference only and do not form a part of this Agreement." (*Id.* at Sec. 8.6.)

respectfully requests an opportunity to file a motion for leave to amend the Complaint to cure any

perceived deficiency.[8]

Respectfully submitted,

/s/ Jeremy A. Oliver
Jeremy A. Oliver (Tenn. BPR No. 029329)
EPSTEIN, BECKER & GREEN, P.C.
424 Church Street, Suite 2000
Nashville, Tennessee 37219
Phone: (615) 564-6032
Fax: (202) 296-2882
Email: joliver@ebglaw.com

*Counsel for Plaintiff*

---

[8] *See Triumph Hosp., LLC v. Constr. Mgmt., Inc.,* No. 3:19-CV-00353, 2019 WL 3841942, at *7 (M.D. Tenn. Aug. 15, 2019) (holding that although plaintiff had not met the requirements of Rule 9(b), leave to amend would be granted because the case was early in the proceedings and the issues underlying plaintiff's fraud allegations were central to the case); *see also* Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be "freely" granted "when justice so requires").

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2022, a copy of the foregoing Response in Opposition to Defendants' Motion to Dismiss or Alternatively Motion to Transfer Venue was filed electronically. Notice of this filing is expected to be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, as noted below.

Seth McInteer
Howell O'Rear
MCINTEER & O'REAR PLC
2801 12th Avenue South
Nashville, TN 37204
seth@mcolawfirm.com
howell@mcolawfirm.com

and

D. Hunter Polvi (Tex. State Bar No. 24083674)
PASSMAN & JONES,
A Professional Corporation
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
polvih@passmanjones.com

*Counsel for Defendants*

/s/ Jeremy A. Oliver
Jeremy A. Oliver